UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUSAN PEEVY,

        Plaintiff,

        v.

PATRICK R. DONAHUE, *et al.*,

        Defendants.

Civil Action No. 11-1209 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff Susan Peevy initiated the instant lawsuit on June 29, 2012 against her former employer, the United States Postal Service, and Postmaster General Patrick R. Donahue alleging that the manner in which she was terminated violated her Constitutional rights.  Specifically, the plaintiff contends that the defendants provided her with fifteen days to appeal her termination, but dismissed her appeal as untimely after erroneously concluding that it was filed one day late.  The plaintiff alleges that the denial of her appeal, and the failure to provide her with a hearing, violates the Due Process Clause of the Fifth Amendment.  The defendants have moved to dismiss this action, arguing that the Civil Service Reform Act ("CSRA") and the Federal Tort Claims Act ("FTCA") preclude judicial review of this dispute and the Court therefore lacks subject matter jurisdiction over the Complaint.  The Court agrees and the plaintiff's Complaint is dismissed.

I.  BACKGROUND

    A.  Factual Background

On May 27, 2011, plaintiff Susan Peevy, a twenty-three year employee of the United States Postal Service (hereinafter "USPS"), was terminated from her position as an EAS-21 Sales Support/Account Management Specialist.  Compl. ¶¶ 9, 22.  The plaintiff's termination followed

an investigation by the USPS Office of the Inspector General ("IG") into the plaintiff's alleged misuse of priority shipping labels. *Id.* ¶¶ 8-12.

Specifically, on August 13, 2010, the IG issued a Report of Investigation ("ROI") in which it concluded that the plaintiff provided Permit No. G-10 priority mail labels to a non-USPS employee, who then used them for non-USPS business. *Id.* ¶ 8. This investigation was triggered when postal employees in Nashville, Tennessee observed an individual attempting to use the labels to ship five packages bearing the plaintiff's name and work address as the return address to Washington, D.C. *Id.* ¶¶ 6, 7. When postal employees questioned the individual using the labels, the individual "claimed that she was instructed to drop off the packages at the Post Office and no postage would be due." *Id.* ¶ 7. The postal employees reported the suspicious use of the G-10 labels, and the IG began an investigation. *Id.*

As part of the IG's investigation, the plaintiff was interviewed on three separate occasions, and admitted that she was familiar with the individual attempting to use the labels, and had given that individual rides in her car on prior occasions. *Id.* ¶¶ 8-10. The IG also interviewed the individual who attempted to use the labels. *Id.* Following this investigation, the IG concluded that the plaintiff was responsible for the unauthorized use of labels, and the resulting loss of $194.30 in Postal Service revenue. *Id.* ¶ 12.

Following issuance of the IG's ROI, the plaintiff was placed on administrative leave on September 24, 2010. *Id.* ¶ 11. Approximately four months later, on December 14, 2010, a USPS supervisor issued a Notice of Proposed Removal charging the plaintiff with (1) unauthorized use of Priority Mail Labels with Permit No. G-10 and (2) lack of candor during the IG's investigation. *Id.* ¶ 12. The USPS and the plaintiff then attempted to mediate the issue, but those efforts were unsuccessful. *Id.* ¶ 13.

In a letter dated April 29, 2011 (the "decision letter"), the USPS formally notified the plaintiff that she would be terminated on May 6, 2011. *Id*. ¶ 13. This letter informed the plaintiff that she had fifteen days from receipt of the letter to submit a written appeal and request a hearing. *Id*. ¶¶ 14-15.

The plaintiff alleges that she and her counsel received the decision letter on Monday, May 2, 2011. *Id.* ¶ 16. On May 17, 2011, fifteen days following the plaintiff's alleged receipt of the decision letter, plaintiff's counsel faxed a request for additional time to file an appeal. *Id*. ¶ 19. The plaintiff states that her counsel did not receive a response to her extension of time request, and, consequently, proceeded to finalize the plaintiff's appeal and "faxed it . . . before midnight on May 17, 2011." *Id. ¶* 21.

In a letter dated May 24, 2011, the USPS dismissed the plaintiff's appeal as untimely, stating that the decision letter had been received by the plaintiff and her counsel on Saturday, April 30, 2011 and her period to file an appeal expired on May 16, 2012.[1] *Id*. ¶¶ 22-23. The letter denying the plaintiff's appeal stated:

> The Letter of Decision was sent to your address of record at 115A Pasture Side Place, Rockville, MD 20850-6005 via Express Mail (E0051013992US) and was delivered on Saturday, April 30, 2011, at 11:13 am as evidenced by copy of the Express Mail Delivery Notice enclosed with this letter. A copy of the Letter of Decision was sent to your attorney of record at the time, Gretchen K. Athias White, Esquire, via Priority Mail with Delivery Confirmation. Your attorney received this letter on Saturday, April 30, 2011, at 9:57 am at her Bowie, Maryland office. A copy of the Priority Mail Delivery Notice is enclosed.

Defs.' Mot. Dismiss, ECF No. 15, Decl. Michele Mulleady, Attach. C, Denial of Appeal dated May 24, 2011. Despite the fact that the USPS "track and confirm statements" indicate that the decision letter was delivered on April 30, 2011, the plaintiff argues that "neither of the track and

---

[1] The defendants noted that "[w]ithout including the date of receipt, the (15) fifteen calendar day window for appealing the Letter of Decision expired on Sunday, May 15, 2011. Because Sunday is not a delivery day, the date for receipt of the appeal moved to Monday, May 16, 2011. Since the appeal was not received until Tuesday, one day later, it is untimely." Defs.' Mot. Dismiss, ECF No. 15, Decl. Michele Mulleady, Attach. C, Denial of Appeal dated May 24, 2011.

3

confirm statements specified either an address or an addressee to which the packages were delivered" and asserts that plaintiff and her counsel actually *received* the decision letter on May 2, 2011.  Compl. ¶¶ 28-29.  Following the denial of the plaintiff's appeal, the plaintiff was terminated from her position at the USPS on May 27, 2011.  *Id.* ¶ 22.

### B. Procedural History

On June 29, 2011, the plaintiff filed a Complaint against defendants USPS and Postmaster General Patrick R. Donahue, alleging that "[w]ith the dismissal as untimely of [plaintiff's] appeal and request for a hearing, and her termination of employment, [the plaintiff] has been effectively denied her constitutional right to due process of law."  *Id.* ¶ 30.  The plaintiff asserts that the defendants violated the Due Process Clause of the Fifth Amendment of the Constitution (Counts I and II), and are additionally liable for defamation of character (Count III), and intentional infliction of emotional distress (Count IV).  *Id.* ¶¶ 31-43.  In compensation for these alleged unlawful acts, the plaintiff requests, *inter alia*, an order directing "the defendants to reinstate Plaintiff Peevy to her employment including with back pay, front pay, benefits, costs and attorney fees."  Compl., Prayer for Relief, ¶ 9.

Simultaneously with the filing of the Complaint, the plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction, seeking to "restrain[] and enjoin[] all Defendants . . . from terminating Plaintiff's employment with the [USPS] and attendant benefits without due process of law . . . ." and to "preserve the status quo as of May 17, 2011."  Pl.'s Mot. TRO, ECF No. 2, at 1;  Mem. Supp. Pl.'s Mot. TRO, ECF No. 2, at 1.  On July 1, 2011, prior to the defendants' appearance in the case, the Court denied the plaintiff's motion for a TRO because she had, *inter alia*, failed to demonstrate irreparable harm.  Mem. Op. & Order, ECF No.

9. The Court then ordered the parties to confer and submit a mutually-agreeable briefing schedule to address the plaintiff's pending motion for a preliminary injunction. *Id.*

Three weeks later, on July 22, 2011, the parties submitted a Joint Motion for a briefing schedule, which extended briefing on the plaintiff's motion for preliminary injunction to August 12, 2011. ECF Nos. 12-13; Minute Order dated July 25, 2012. In accordance with the briefing schedule, the defendants filed their opposition to the plaintiff's motion for a preliminary injunction on July 27, 2011, and also moved to dismiss the plaintiff's Complaint for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). ECF No. 15. In the plaintiff's opposition to the motion to dismiss and her reply in support of her preliminary injunction, the plaintiff failed to address a key requirement for her motion for a preliminary injunction: namely, how the plaintiff would be irreparably harmed without injunctive relief. In any event, in light of the jurisdictional issue raised by the defendants, the Court combined consideration of the plaintiff's motion for preliminary injunction with the defendants' motion to dismiss.

As explained below, upon consideration of the defendants' motion to dismiss, the Court concludes that it lacks subject matter jurisdiction over the plaintiff's claims. Consequently, the defendants' motion to dismiss is GRANTED and the plaintiff's motion for preliminary injunction is DENIED.

## II.     STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Mostofi v. Napolitano*, No. 11-0727, 2012 U.S. Dist. LEXIS 9563, at *4 (D.D.C. Jan. 27, 2012) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Ki Sun Kim v. United States*, No. 08-01660, 2012 U.S. Dist. LEXIS 2094, at *8 (D.D.C.

Jan. 9, 2012). As the Supreme Court has explained "many times," the "district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)) (internal citations omitted); *see also Micei Int'l v. DOC*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court . . . The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it*.") (internal citations and quotation marks omitted). For this reason, a "federal district court's initial obligation is to ascertain its subject matter jurisdiction." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 45 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 U.S. App. LEXIS 13869 (D.C. Cir. July 6, 2010). When a court lacks subject matter jurisdiction, it must dismiss the case. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003); *Westberg v. FDIC*, 759 F. Supp. 2d 38, 41 n.1 (D.D.C. 2011); *Dubois v. Wash. Mut. Bank*, No. 09-cv-2176, 2010 WL 3463368, at *2 (D.D.C. Sept. 3, 2010); *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 135 (D.D.C. 2009). In this respect, it is "the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence." *Sai v. Clinton,* 778 F. Supp. 2d 1, 5 (D.D.C. 20011) (quoting *Am. Farm Bureau v. Envtl. Prot. Agency,* 121 F. Supp. 2d 84, 90 (D.D.C. 2000)). In deciding whether to grant a motion to dismiss for lack of jurisdiction, "the district

court may consider materials outside the pleadings" but "must still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (*citing Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) and *United States v. Gaubert*, 499 U.S. 315, 327 (1991)); *see also Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (noting that courts may consider materials outside the pleadings in ruling on a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction); *Citizens for Responsibility & Ethics in Wash. v. FEC*, No. 11-951, 2011 U.S. Dist. LEXIS 149672, at *6 (D.D.C. Dec. 30, 2011). The court, however, "need not accept as true a legal conclusion couched as a factual allegation, nor inferences that are unsupported by the facts set out in the complaint." *Mostofi*, No. 11-0727, 2012 U.S. Dist. LEXIS 9563, at *5 (citations and quotation marks omitted).

## III. DISCUSSION

The plaintiff alleges in Counts I and II that the defendants violated the Due Process Clause of the Fifth Amendment when they improperly denied her appeal and an opportunity for a hearing before terminating her employment. The plaintiff further alleges in Counts III and IV that the defendants are liable for defamation of character and Intentional Infliction of Emotional Distress, respectively. The defendants argue that the Court lacks jurisdiction over Counts I and II because the Civil Service Reform Act precludes judicial review of employment actions relating to the plaintiff. Counts III and IV must be dismissed, according to the defendants, because the Federal Tort Claims Act bars the plaintiff from asserting those claims. The defendants' arguments are addressed below.

### A. Counts I and II Must Be Dismissed Because The Civil Service Reform Act Precludes This Court From Granting Relief

Counts I and II allege that the defendants' violated the Fifth Amendment's Due Process Clause when they denied the plaintiff's appeal and terminated her employment without providing her an opportunity for a hearing. Specifically, although the plaintiff clearly received the letter informing her of her right to appeal, the plaintiff alleges that the defendants improperly denied her appeal as untimely because they relied on delivery confirmation receipts that (1) did not detail where the decision letter was delivered and (2) only indicate the date on which the decision letter was delivered, not when it was actually *received* by the plaintiff. The defendants argue that the Court lacks subject-matter jurisdiction over these claims because the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 4303, 7513, provides the exclusive remedy for federal employees challenging adverse employment actions, and does not provide the plaintiff with a judicial remedy. The Court agrees.

### 1. *The CSRA Precludes Review of the Defendants' Termination of the Plaintiff*

The CSRA, codified in Title 5 of the United States Code, "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988); *see also Peter B. v. United States*, 579 F. Supp. 2d 78, 81 (D.D.C. 2008) ("When enacted, the CSRA established an elaborate new framework for evaluating adverse personnel actions [taken] against certain categories of federal employees.") (internal citation and quotations omitted). This statutory scheme is the "exclusive framework for judicial review of adverse disciplinary actions taken by federal agencies," *id.* (quoting *Am. Postal Workers Union v. U.S. Postal Serv.*, 940 F.2d 704, 709 (D.C. Cir. 1991)), and "precludes non-CSRA remedies for an adverse personnel action even where the CSRA does not make those remedies available to the plaintiff." *Feldman v. CIA*, 797 F. Supp. 2d 29, 45 (D.D.C. 2011); *see also Am. Postal Workers Union*, 940 F.2d at 708-09. In other words, "what you get under the

CSRA is what you get" and the provisions of the CSRA "[cannot] be supplemented by an implied private right of action." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005). This is because, as the D.C. Circuit has noted, the "failure to include any relief within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available." *Id.* at 66.

Under the CSRA, civil service employees are classified into three categories: Senior Executive Service, 5 U.S.C. § 2101a; Competitive Service, 5 U.S.C. § 2102; and Excepted Service, 5 U.S.C. § 2103. Within each of these categories, certain veterans and their relatives are provided preferential treatment and are granted rights not available to non-preference employees. 5 U.S.C. § 2108. Prior to her termination, the plaintiff was employed as an EAS-21 Consumer Research Analyst, which designated her under the CSRA as a non-preference employee in an Excepted Service. *See* 5 U.S.C. §§ 2103, 2108, 7511; Defs.' Mot. Dismiss, ECF No. 15, Ex. A, Decl. Michele Mulleady.

As a non-preference employee in an Excepted Service, the CSRA permits the plaintiff to challenge her termination for unacceptable job performance, 5 U.S.C. § 4301 *et seq.*, or for misconduct, 5 U.S.C. § 7501 *et seq.*, to the Merit System Protection Board ("MSPB"). *See also Garrow v. Gramm*, 856 F.2d 203, 205 (D.C. Cir. 1988). The plaintiff is not, however, entitled to any additional administrative or judicial review. *Id.*; *Fausto*, 484 U.S. at 448 ("The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter."); *Am. Postal Workers Union*, 940 F.2d at

9

704. This Court therefore does not have subject matter jurisdiction over any claim challenging the defendants' decision to discharge the plaintiff.

### 2. *The CSRA Precludes Review of the Plaintiff's Due Process Claims*

The plaintiff argues, however, that Counts I and II should not be dismissed because the plaintiff "has not raised the merits of the USPS underlying action as a basis of this Court's jurisdiction, only the denial of her right to due process is before this Court." Pl.'s Opp'n Mot. Dismiss, ECF No. 17, at 10. She contends that "[p]ursuant to the 5th Amendment of the Constitution of the United States, this court has jurisdiction to hear [plaintiff's] claim of denial of due process." *Id*. This argument is incorrect.

As the defendants note, "[e]ven where an employee brings a constitutional claim to challenge his or her removal, the CSRA still precludes a judicial remedy." Defs' Mot. Dismiss, ECF No. 15, at 7. Indeed, simply alleging "constitutional violations does not take [] claims beyond the remedial provisions of the CSRA." *Hunt v. Dep't of Agriculture*, 740 F. Supp. 2d 41, 48 (D.D.C. 2010); *Steadman v. Governor, U.S. Soldiers' and Airmen's Home,* 918 F.2d 963, 967 (D.C. Cir. 1990) (declaring that federal employees may not circumvent the CSRA even when they raise constitutional claims). A federal employee covered by the CSRA may maintain constitutional claims in district court "[o]nly in the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures." *Steadman*, 918 F.2d at 967 (dismissing federal employee's claim for lack of jurisdiction where plaintiff brought Due Process claim challenging adverse employment action covered by CSRA); *cf. Weaver v. United States Information Agency*, 87 F. 3d 1429, 1432-35 (exhaustion of CSRA remedies not required because the Court would have jurisdiction over the plaintiff's claim that the regulation at issue violated her First Amendment rights if asserted outside the context of the agency's personnel

action against her); *Andrade v. Lauer,* 729 F.2d 1475, 1490-93 (D.C. Cir. 1984) (exhaustion of CSRA not required where plaintiffs had challenged the defendants' constitutional authority to issue regulations). The plaintiff's instant constitutional challenge does not fall within this narrow exception.

The plaintiff argues that she "has not placed the merits or bases of defendant USPS's action against her before this Court. It is strictly the lack of due process afforded her through the machinery or grievance procedure which the USPS has established for employees in Plaintiff Peevy's category that she challenges through this action." Pl.'s Opp'n Mot. Dismiss, ECF No. 17, at 4. This, however, mischaracterizes the Complaint.

While it is true that the plaintiff does not seek review of the IG's ROI or the basis for the plaintiff's underlying termination, the Complaint makes clear that the plaintiff seeks "injunctive relief against [] wrongful and illegal termination" and claims that the defendants "erroneously" terminated her from her position. Compl. at 1; ¶ 32. Indeed, the plaintiff seeks as relief, *inter alia*, an order directing the defendants "to reinstate Plaintiff Peevy to her employment including with back pay, front pay, benefits, [and] costs . . . ." Compl., Prayer for Relief, ¶ 9. This is clearly not the "unusual case" where the plaintiff's claims are "totally unrelated" to her termination so as to provide the Court with jurisdiction over the plaintiff's constitutional claims. *See Steadman*, 918 F.2d at 967. Rather, the plaintiff's constitutional claims appear to be an effort to circumvent the CSRA and obtain renewed reconsideration of the defendants' employment decision.

### 3. The Plaintiff's Constitutional Claims Have No Merit

That said, even if the Court could reach the plaintiff's constitutional claims, her claims have no merit. The plaintiff's constitutional claims reduce to one discrete issue: The plaintiff

contends that the defendants incorrectly denied the plaintiff's appeal as untimely, and denied her a hearing, because they concluded that the plaintiff had fifteen days from *delivery* of the decision letter, rather than from *receipt* of that letter.  Pl.'s Opp'n Mot. Dismiss, ECF No. 17, at 6.  The plaintiff states that she received that letter on May 2, 2011, and her appeal was thus timely filed on May 17, 2011.  Compl. ¶ 16.  Contrary to plaintiff's assertion that "no evidence" shows delivery was made prior to May 2, 2011, the defendants have submitted to the Court delivery confirmation statements indicating that the decision letter was delivered to the plaintiff and her attorney on April 30, 2011.  Pl.'s Opp'n Mot. Dismiss, ECF No. 17, at 6; Defs.' Mot. Dismiss, ECF No. 15, Decl. Michele Mulleady, Attach. B.  The defendants did not err in relying on these confirmation statements, nor in their decision to equate delivery of the decision letter with receipt of that letter for the purposes of initiating the plaintiff's time to appeal.  It is true that the defendants' Employee and Labor Relations Manual states that employees may request a hearing within "15 calendar days of receipt of a letter of decision," but the defendants have reasonably interpreted that receipt is satisfied upon delivery of the letter.  *See* Defs.' Mot. Dismiss, ECF No. 15, Decl. Michele Mulleady, Attach. A.  To require otherwise would not only place an undue administrative burden on the defendants, but may also incentivize employees to evade receipt of the decision letter in an effort to forestall their dismissal.

> 4. *The Declaratory Judgment Act Does Not Provide Jurisdiction for the Plaintiff's Constitutional Claims*

The Court does not have subject matter over the plaintiff's constitutional claims and therefore denies the plaintiff's request for declaratory judgment.  Federal courts may grant declaratory relief under the Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

A prerequisite to declaratory relief, however, is that the Court must initially have jurisdiction to adjudicate the plaintiff's claims. *See Citizens for Responsibility and Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 222 (D.D.C. 2009) (stating that the Declaratory Judgment Act "is not an independent source of federal jurisdiction"); *Seized Prop. Recovery, Corp. v. U.S. Customs and Border Protection*, 502 F. Supp. 2d 50, 64 (D.D.C. 2007) (stating that the Declaratory Judgment Act only applies "if a judicially remediable right already exists"). As discussed above, the CSRA precludes judicial review of the plaintiff's claims. Accordingly, the Court may not grant declaratory relief.

### B. Count III and IV Are Dismissed Pursuant to the Federal Tort Claims Act

Counts III and IV assert that the defendants are liable for defamation of character and intentional infliction of emotional distress. Compl. ¶¶ 37-43. The defendants argue that both of these claims are barred by the Federal Tort Claims Act ("FTCA"). The plaintiff failed to address the argument that Counts III and IV should be dismissed in her opposition brief. The Court therefore deems dismissal of Counts III and IV as conceded. *See Beattie v. Astrue*, No. 01-cv-2493, 2012 WL 628346, at *3 n.13 (D.D.C. Feb. 28, 2012) ("An argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded," quoting *Rosenblatt v. Fenty,* 734 F. Supp. 2d 21, 22 (D.D.C. 2010)). Even on the merits, however, the defendants are correct that the FTCA bars the plaintiff from asserting her tort claims and these claims must be dismissed.

#### 1. *Count III is Dismissed Because the Federal Tort Claims Act Bars Plaintiff's Defamation Claim.*

Count III alleges that the defendants defamed the plaintiff by wrongly accusing her of unauthorized use of priority shipping labels and by "portray[ing] her as a thief." Compl. ¶ 38.

The plaintiff may not, however, assert a defamation claim against the defendants because the government has not waived sovereign immunity as to these claims.

"The FTCA waives the sovereign immunity of the United States with respect to some, but not all, torts. Those torts for which the United States retains immunity are enumerated in 28 U.S.C. § 2680(h)." *Peter B.*, 579 F. Supp. 2d at 83 (internal citations and quotations omitted). The statute's waiver is limited, and it explicitly bars suits against the United States with regards to claims of "libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Therefore, courts in this Circuit uniformly dismiss misrepresentation and defamation claims against the United States. *Marcus v. Geithner*, No. 09-cv-1686, 2011 WL 4402362, at *4 (D.D.C. Sept. 22, 2011) (concluding that the FTCA bars "claims that arise from alleged misrepresentations, whether negligent or intentional," citing *Block v. Neal,* 460 U.S. 289, 296 (1983)) (internal citations and quotations omitted); *see also Gardner v. United States*, 213 F.3d 735, 737 n.1 (concluding that the plaintiff's defamation claim against the United States was barred); *Wilson v. U.S. Dep't of Transp.*, 759 F. Supp. 2d 55, 64 (D.D.C. 2010) (dismissing a former federal employee's defamation claim because the FTCA explicitly bars such claims); *Upshaw v. United States*, 669 F. Supp. 2d 32, 44 (D.D.C. 2009) (dismissing defamation claim of former Library of Congress employee due to lack of subject matter jurisdiction under the FTCA); *DeGeorge v. United States*, 521 F. Supp. 2d 35, 40 (D.D.C. 2007) (holding that the FCTA barred plaintiff's claim for misrepresentation where alleged false statements made by U.S. agents resulted in destruction of plaintiff's boat); *Bonham v. U.S. Gov't Med. Review Bd.*, No. 90-cv-0733, 1990 WL 169297 (D.D.C. Oct. 19, 1990) (concluding that FCTA barred suit over former Army employee's defamation claim for alleged false statements made about him by the United States Government Medical Review Board). Given that the defendants retain sovereign

immunity against claims of defamation, and the FTCA explicitly bars such claims, Count III of the plaintiff's Complaint is dismissed.

### 2. Count IV is Dismissed Because the Plaintiff Failed to Exhaust Her Administrative Remedies

Count IV alleges that the defendants are liable for intentional infliction of emotional distress because "terminating [plaintiff's] employment without a hearing was with malice and with an intentional manner to inflict emotional distress by depriving her of her health insurance and other benefits, as well as her income." *Id.* ¶ 43. Although otherwise cognizable under the FTCA, this claim must be dismissed because the plaintiff did not exhaust her administrative remedies prior to filing the instant lawsuit.

The plaintiff may only assert an intentional infliction of emotional distress claim against a federal agency pursuant to the FTCA. *Wilson*, 759 F. Supp. 2d at 64 ("[C]laims for negligent and intentional infliction of emotional distress against a federal agency can only be pursued via the FTCA."); *Johnson v. DiMario*, 14 F. Supp. 2d 107, 111 (D.D.C. 1998). In order to bring suit under the FTCA, a plaintiff must have exhausted all available administrative remedies, which requires her to have "(1) presented a federal agency with a claim describing, with particularity, the alleged injury and damages and (2) either received a written denial of the claim from the agency or waited six months from the date of filing without obtaining a final agency disposition." *Totten v. Norton*, 421 F. Supp. 2d 115, 122 (D.D.C. 2006); 28 U.S.C. § 2675(a); *see also Wilson*, 759 F. Supp. 2d at 64 (D.D.C. 2011) (citing *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993)). Failure to comply with the administrative requirements of the FTCA deprives the Court of jurisdiction to hear the case. *Id.* at 122; *see also GAF Corps. v. United States*, 818 F. 2d 901, 905 n.6 (D.C. Cir. 1987).

The Complaint does not allege that the plaintiff complied with the FTCA and filed an administrative tort claim with the defendants prior to initiating this case.  The defendants attest that the plaintiff has not done so, Decl. Elinor Brown, ECF No. 16, ¶ 4, and plaintiff does not rebut this assertion.  Having failed to comply with the FTCA and exhaust her administrative remedies, the plaintiff may not pursue her intentional infliction of emotional distress claim in this Court.  Accordingly Count IV is dismissed.

## IV. CONCLUSION

As explained above, the Court lacks subject matter jurisdiction over the plaintiff's claims and the defendants' motion to dismiss is therefore GRANTED.  Consequently, the plaintiff's pending motion for preliminary injunction is DENIED.  An Order consistent with this Memorandum Opinion will be entered.

**DATED:  MARCH 6, 2012**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge